Our next case is the National Veterans Legal Services Program et al. v. United States v. Eric Alan Isaacson, 2024-1757. Mr. Isaacson, when you are ready. Good morning. May it please the Court. I'm Eric Alan Isaacson, the class member, objector, and appellant in this case, which raises several, I think, fairly important issues. The first one to the district court's jurisdiction under the Little-Tucker Act, given the fact that the claims of some of the class members in this case would far exceed $10,000. I think it exceeds the Tucker Act jurisdiction. None of the individual claims does. Well, individual class members have claims that greatly exceed that. If you want to talk about the individual claims, they contend that each download was a claim, an exaction claim. Well, it is. This is an illegal exaction claim theory, and every single time the government extracts money illegally, it's a separate claim. Well, the government doesn't extract money when people download from paychecks. I don't want to debate the nature of the claims. The fact is, it's an illegal exaction claim, and what they're saying, what they said, what their basis for jurisdiction was, was this was an illegal exaction, that the government extracted more money than they were entitled to under the statute, and it's every single time that happens. It's not some kind of damages claim where the government does something once and then has a flow of damages from it. I mean, this would come up in a statute of limitations context, that every single one of these would start the statute of limitations running anew. Well, PACER waives the exactions for the first $15, double the $30. You're not doing yourself any benefits by getting into the details of this. I would like then to move to the issue of attorney's fees, where this court in Health Republic indicates that the district court should act as fiduciary for the class and should not start with the request the class representatives are making, the class counselor making. So I get why you're arguing on this, but I don't think that Health Republic goes as far as you think it goes. It seems to me that what the point is, is you shouldn't start with the class request as a per se reasonable request, but that you have to do an independent evaluation of it. I think it seems like you're arguing that the district court just has to get all the records and go through the billing and let a reasonable rating come up with its own fee. And if that's what you're arguing, that seems to me to be impractical and not required by anything in Rule 23. If you're arguing that as a matter of the district court's decision, it didn't do an independent analysis, then you can argue that. But it seems to me that the district court had a very thorough, reasoned opinion about why the fees sought here were reasonable. It looked at the percentage basis. It did the cross-check on the Lodestar basis. It looked at the ranges in these kind of classes and all the different ranges in all these cases, and it found that the request was reasonable. That seems to me to be an independent review of the attorney's fees request as required by Health Republic and other precedent. Well, I think the first thing the court needs to do is or one of the first things the court needs to do is make a choice between a Lodestar fee and a percent of fund fee. And the first thing the court's going to look at is what's the amount of the claimed Lodestar. Are you saying we should only do a Lodestar because that's actually how your brief reads? I do not say that you should only do a Lodestar. For example, it might be a case where if you look at the Lodestar, it amounts to 90 percent of the common fund. If the Lodestar is amounting to 90 percent of the common fund, it would be unreasonable to give a Lodestar award, more reasonable to go to a percentage award and cap the fee at 20 or 30 percent. In this case, if you look at the Lodestar, you see that they have very high rates. They're very good attorneys. They have very high rates, far above the matrix that- Well, but the district court found that to be a reasonable rate in the jurisdiction. Well, if the district court is going to accept their rates is very high and is reasonable, still the fee that they're asking for is about four times their Lodestar. Within the range that is allowed by the court, the lower court. That's a range that can sometimes be allowed, but you've got to have very good reasons for allowing larger amounts than the Lodestar. The fee-shifting cases- The district court gave reasons. Also, it looked at the percentage basis and said, this is well within the percentage that we award when we look at percentage basis for common fund, too. Both checks were within ranges courts gave. When the court said, yes, this is towards the upward range on Lodestar, it said, this is a very complicated case. It is a very complicated class action. They're very skilled counsel at class action, and looking at the two different ways of calculating it, it found that it was a reasonable basis. I don't understand. Are you arguing there's legal error there somewhere? Because if you're asking us to overturn that for abuse of discretion, I don't even think it's anywhere close to an abuse of discretion. I think it's a question of approach. I think that the Supreme Court in Purdue says that Lodestar adequately compensates class action counsel in the typical case. If you are acting as a fiduciary for the class- Is that a common fund case? It is a fee-shifting case. Well, there are vastly different reasons for fee-shifting where the defendant pays in common fund, which is the plaintiffs paying their own attorneys. And so I would never read that case on fee-shifting to apply to a common fund situation. Well, in a fee-shifting case, you're right. The assumption is that the defendant's been found liable, that the defendant's a wrongdoer who has to pay the plaintiff's fees as a consequence. In a common fund case, class members haven't done anything wrong. If the compensation- No, and they've engaged attorneys to represent them to gain a settlement. And if they agree to that settlement and a certain range of attorney fees, the attorneys are entitled to it as long as it's reasonable under an independent evaluation. Well, I think an independent evaluation starts by asking what's reasonable compensation. And reasonable compensation starts with the Lodestar ordinarily. And after you look at the Lodestar, you can think about percentage fee awards. But the law doesn't require that it start with the Lodestar. Under Rule 23, you can start with the percentage of the common fund and do a cross-check. It wouldn't be called a cross-check if it had to be the first check. Well, you can start with the percentage of the fund, you do a cross-check and see that it is four times the Lodestar. That's four times what would be sufficient to compensate class counsel in a fee-shifting case if they'd taken it to trial and won the case. Here they're settling the case for a fraction of the damages that are claimed. They're not getting a full win. And by settling it, they're not going, you know, exposed to the risk of going all the way to trial. It doesn't make sense for lawyers to get four times the amount they get for winning a case because they've settled it for a fraction of the damages. I don't recall a case that said that fees should be reduced because it came in a context of a settlement versus a verdict. I don't know that case. Well, I think that... Can you cite that to me? I don't have a case cite for you off the top of my head, Your Honor. But I do think that there are substantially greater risks in going to trial and somebody who takes a case to trial and wins has a stronger entitlement to a very generous fee than somebody who settles the case. This sounds like disagreement with the district court's discretionary decision. This does not sound like legal error to me. Well, I think it's a question of the proper approach to the fee award. And I think that... I don't understand what you mean by that. Do you mean that as a matter of law, they have to start with Lodestar? If that's the case, you're wrong. You lose on the law, in my view. If you have some other view of what the law is, quit saying, in general, the approach and tell me what you think legally the district court is required to do. I think legally the district court is required to act as a fiduciary. It's supposed to give a moderate fee and... A reasonable fee, not a moderate fee. Well, the Supreme Court's... Reasonable. The Supreme Court's common fund precedent, seminal common fund precedent, RINO, Prestige v. RINO, says it has to be done with moderation and a jealous regard for the interests of the class. Okay, but none of that is legal error. The district court, in this case, gave a very thorough, exhaustive analysis that meets all of those requirements. It's at the very, very high end of fee awards. We know it's at the very high end. The district court gave reasons for why he thought, in his discretion, it was appropriate. If there's an error law on that, you can tell me, but if you're asking me to say that's an abuse of discretion, you're not going to win with me. And I don't understand your legal argument when you say it's the general approach, because he followed the general approach. I think he started with the class counsel's fee request and asked, is this something that can be defended as reasonable? And I think Health Republic says you don't do that, quite frankly, Your Honor. And my other problem with the settlement is a question of the prorated distribution, which doesn't take account of the fact that the largest paying class members got members. Do you want to talk about the incentive awards? Because that's the issue you seem to be teeing up for Supreme Court review. I mean, it seems to me that the Second Circuit and the Ninth Circuit and the other circuits that have looked at this have the better of the arguments, but that prorated stuff you're not going to get anywhere with me. Let the clients pay their fees. I don't understand that at all. And classes. And the clients and classes are not going to get it back. And the fact is that's up to the clients and their attorneys. That's not up to us. Well, I think it's a question of whether the distribution is equitable. And with respect to incentive awards, the Supreme Court's opinions in Greeno and Pettis, I think, are pretty clear. Right, the 1800s cases. I mean, I understand that, you know, the 11th Circuit bought off this argument, although four judges dissented from the denial. To me, old cases from a creditor situation seem to have very little relevance to modern class action and even the Supreme Court has at least nodded to incentive awards. So is it just those two old Supreme Court cases and the 11th Circuit case that you have? Is there anything else? I have those two Supreme Court cases and the 11th Circuit case, and you have the Second Circuit opinion in Fikes Wholesale, where a panel of the Second Circuit writes an opinion that basically seems to say, we think the 11th Circuit is probably right, but we think we're bound by preexisting Second Circuit authority if we don't go in bank. And then in the concurring opinion in that case, which is written by the same judge. So let me ask you this. If we don't think those old Supreme Court cases are binding because they don't involve Rule 23, they involve creditors, then under Rule 23, without regard to those Supreme Court cases, are incentive awards allowed? Well, the fact that they're – It's a reasonableness inquiry, right? Could you restate the question, Your Honor? I'm just saying ignore those Supreme Court cases. Just look at Rule 23, the hypothetical. Our incentive awards are allowed under Rule 23. Well, Rule 23 says nothing to authorize incentive awards, Your Honor. Does it say anything to prohibit them? It doesn't specifically prohibit them, but in the – So isn't the touchstone of a settlement is whether it's equitable and reasonable? It is generally understood that when you are acting as a class representative, you give up the opportunity to ask for special rewards that the rest of the class isn't getting. I see I'm going into my rebuttal time, Your Honor. We will give you your three minutes back. Thank you, Your Honor. Mr. Gupta? Thank you, and may it please the Court. Deepak Gupta for the plaintiffs at Belize. I will be sharing our time with Ms. Daniel from the Department of Justice. This appeal concerns the district court's careful approval of a settlement resolving a decades-long historic class action against the federal judiciary. And before I jump into the legal issues that Mr. Isakson has presented, I just want to emphasize that under this settlement, the vast majority of PACER users will be refunded in full 100 cents on the dollar for past charges. The settlement resolves the claims of what may well be the most litigious group of people and entities ever assembled in a single case, and yet out of over a half million class members, a lone objector now appeals. Mr. Isakson's principal contention in his briefing was not that the settlement was unfair, although he does argue that. It's instead his chief argument was that the DOJ, the AO, the Plaintiffs' Council, and the two district judges who oversaw this case were all laboring under a mistaken understanding of the jurisdiction of the district court for the past decade of litigation. And so in his view, the entire settlement must be unwound, and everyone has to go back to square one. I'm not going to belabor the arguments there because, Judge Hughes, I think you – I don't really have much interest in that unless my colleagues do. Right. That would just blow up the settlement. To the extent there's any assumption that they just – that the government would just pay the amount and it would just go to the smaller people is ridiculous. I mean, it would blow it up. And frankly, I don't know what would happen. The big people would just go to court with their own claims and sue, and there would be a different settlement. And then a lot of these small-time payers would probably just be left out. But in any event, you could – I guess you can do this in any way you want, but I have two main points that I'd like to hear from you on. And one is, is our precedent, the health whatever precedent, and whether the district court, the way it looked at the attorney's fees complied with our precedent and to this incentive. Sure, yeah. The incentive stuff seems to be – I mean, it's clear you understand, too, that it's being teed up for the Supreme Court. The Supreme Court denied cert on this, I think, at least a couple of times. It has denied cert on it, but Mr. Isakson has sought cert for R.I. Maybe at some point it will have to address it. But those are the two things that I'm most concerned about. And do it with the overall approach to the attorney's fees. I'm not pulling my punches. I'd like the district court judge to do a very thorough, independent analysis of the attorney's fees. But it seems like Mr. Isakson has some dispute that it's just improper altogether to start with the attorney's fees request from class counsel and then do the percentage and Lodestar products. I do think Mr. Isakson is misreading the Health Republic case. I mean, the Health Republic decision does emphasize that what the district court is not supposed to do, and I think what happened there, is to simply defer to class counsel's request and to treat it as almost a fait incompli unless there's some, you know, error. Instead, I think, and this is what Judge Friedman emphasized, the district court is supposed to be a fiduciary for the absent class members and really has an important role to do an independent analysis because you don't have the ordinary adversarial scenario. And that's why we have class action objections. That's why we have Rule 23E. That's the architecture of this whole enterprise. And I think, you know, if I were teaching law students about how to do this or judges, I think this district court decision is really a model of the kind of analysis that a district judge should engage in. It is very, very careful not to simply defer to either of the parties. But you do have an unusual situation here in which the Department of Justice is representing the defendants. And the Department of Justice behaved, I think, differently from the way private counsel representing a corporate defendant might behave, where all they care about is how much their client will be paying. And so they don't really care as much about the amount that goes to attorney's fees. Whereas here, as part of the settlement architecture, the Department of Justice negotiated for a percentage cap. So even before it came to the district judge, you already had the DOJ playing that role, and then it played that role furthermore in the settlement approval process. But even if you set that all aside, I think it's hard to read Judge Friedman's opinion and not come away with the conclusion that this is a district judge who took the responsibility to act as a fiduciary very seriously and didn't even rely on our expert reports to come to the conclusion about the comparators. He did his own analysis and found relevant comparators. And so I think that's why that set of arguments fails. I do want to jump to the incentive award question because I think it's important. I think you're right, Judge Hughes, that the elephant in the room here is that the objector is trying to tee this up for Supreme Court review. And so I would just urge this Court to do what Judge Friedman did, which is to point out that even under the line of cases that Mr. Isaacson is relying on, that is, even if you were under the Eleventh Circuit's approach or the 19th Century cases, even those cases recognized that a plaintiff suing on behalf of the class, that it's appropriate for there to be reimbursement for the out-of-pocket expenses or for the attorney expenses. And that's what happened here. You had three nonprofit associations that served for a decade as the named plaintiffs, and they incurred expenses. They had attorneys who were they could have hired outside counsel, I suppose, to protect their interests, but they did things more efficiently. They did it in-house. And all we're saying is it's a reasonable measure of these incentive awards. It's a bargain, frankly, for the class. I mean, it has to be a severe bargain, right? The incentive awards are what? They're $10,000. So, I mean, MBLSP clearly spent more, well in excess of $10,000 of its own attorney time on this case. Correct, yes. And whoever the other ones were, too. Correct. And so what I'm saying is, Judge Hughes, I agree with all the things you were saying. I do think the vast majority of the circuits have got this right. You don't want us to decide that issue? I think maybe this is not the right case to take a stand on this big issue because of the facts. I'm a little concerned about going in that direction for a different issue. I'm concerned that we create a mini-industry of class representatives hiring counsel to get reimbursed. So this is not the typical class action case. The typical class action case is a wage and hour case, where an employee, or usually an ex-employee, has stepped up, or a false advertising case where the bag of peas didn't have, wasn't all natural. And so I fear that if we go in this direction, the consequences are actually far greater than the concern. I just don't understand why. Are you worried that Rule 23 isn't sturdy enough? No, no, I think it is. I just think, look, frankly, this class action has been held up for a couple of years now because of this appeal. If it goes to the Supreme Court, if there's a petition, it will be held up longer. And just to express, to address your concern, Judge Friedman, I see I'm running out of time. I think in those, you know, that kind of mind run of cases, it's unlikely that an individual would have any need for counsel. Where this comes up is in antitrust litigation. We've cited examples where you do have entities that have their own counsel, and so the way to compensate them is in this manner. Thank you. Thank you, Mr. Gupta. Ms. Daniel. May it please the Court, Alexis Daniel on behalf of the United States. Let me jump right in. Yes. I hear it from the Justice Department, and I want to hear your all's view on this jurisdictional issue. Because I mean, having been there myself, I can see some appeal. If I was representing the Justice Department to say that this doesn't comply with the Little-Chunker Act, so do you agree that because of the nature of these illegal exaction claims, that everyone is a separate claim, and it's under $10,000, and so there was proper jurisdiction in the District Court? That's correct, Your Honor. The United States does agree with that assessment here based on the specific claims at issue. We never contested jurisdiction because we believe there was correct Little-Chunker Act jurisdiction, and when questioned by the District Court about that class certification and the fairness hearing, we agreed that each piece or transaction gave rise to an individual claim, and there is no claim access. So this case was here before, too. That's correct, Your Honor. And this specific jurisdictional issue wasn't at play, but the Court did seem to understand the nature of plaintiffs' claims. I guess my question is why wasn't it the policy setting that allowed for reimbursements of costs beyond what the PACER fee statute allowed? Why isn't that a one-time wrong, and it's just damages flowing from that? Because there is the fee schedule, but each time that transaction occurs is what creates the relationship between the government and each PACER user. So each time they're going in, selecting a download, they're prompted to answer, do you agree to incur these charges? And then they must agree to that before they incur it. And each download itself is distinct. It could be for different purposes, different documents, different clients if it's an attorney. So in our view, it really is distinct to that individual claim and very unique to this case. I'm glad you said that, but I want to make sure that you all know that we're going to hold you to that in the next illegal exaction case too if you try to come in and get a kick to the Court of Federal Claims by aggregating them. Yes, we understand that, Your Honor, and I think our view here is based on this specific transaction at issue on these PACER circumstances and under Alaska Airlines, that this is the correct view in this case, which is why jurisdiction was never contested by the United States. I can briefly touch on attorney's fees and service awards because I can see that the Court is interested in that. The United States does fully agree with the position of class counsel that this is a reasonable attorney fee award here. The district court did thoughtfully apply this court's precedent. It had discretion to choose percentage or lodestar. It went with the percentage route, which is widely accepted at the United States prompting. It conducted a lodestar crosscheck. It then reviewed that lodestar crosscheck to determine it was a reasonable range and still then thoughtfully reviewed it to determine that it was reasonable against comparative cases, the risks in this case, and class counsel. And is it the government's position that Rule 23 allows incentive awards? Yes, Your Honor. We do believe they allow incentive awards, and to my co-appellee's point— So if this goes up, we're not going to get a view from the SG that incentive awards aren't allowed, or it's your view at your level, not at the higher level? I believe it is our view that the service awards are permissible in this case and particularly reasonable in this case. That's a very careful answer. Well, I have to admit I didn't check with the SGs. That's fine. I'm not going to hold you to what the SG says or not. I'm just curious if this does go up, if the SG's going to take a different view on this 1800s case law. I have no reason to believe that the SG would take a different view at this time. The incentive awards here were reasonable. Rule 23 does account for treating class members equitably. Here, the named class members did contribute significant time and expenses, whether they were attorneys or not. I don't think there's any dispute that they went above and beyond in their contributions, making them particularly reasonable here to award those service awards. Can I circle back to the jurisdictional issue?  I was surprised that Mr. Isaacson in some ways sandbagged the appellees on the Keene case, and I wondered if you wanted to make any comments about Section 1500 and the definition of claim that he argues in the Keene case. Yes, I can address that. Our position would be that Keene is just totally distinguishable here from dealing with the question of whether a claimant is bringing the same claim in one court versus a different court versus this case where we need to look at the exact nature of the transactions to determine there's a claim. I think the line of authorities actually addressing the overcharges cases is most attractive here. Thank you. If there are no further questions, the United States respectfully request that this Court affirm the ruling of the District Court. Thank you, Counsel. Mr. Isaacson, we'll give you three minutes if you need it. Thank you, Your Honor. First, I'd like to say that I didn't try to sandbag anybody with the Keene case. The Keene case is a decision that I found when I was doing research for my reply brief. It was not a case that I was aware of when I was writing my opening brief, Your Honor. Had I been aware of it as a case that would be important to my argument on appeal, at the point I was writing the opening brief, I would have included it there. I think that you made a very important point with respect to the danger of having big incentive awards based on the fact that somebody hired their own extra counsel to advise them internally. I think that's a legitimate concern, and I think that this is a case. Why can't that be handled under the normal fairness and equitable review you have to do under Rule 23 as opposed to just outright forbidding them? Well, I think that they're forbidden by Supreme Court precedent, Your Honor, but I also think that it matters that the class notice in this case indicated that it would be asking for attorney's fees in a given amount and for incentive awards in a given amount, and then they come into court and say, oh, well, the incentive awards are really justifiable as attorney's fees. Now, if somebody got sandbagged, it's me and other class members when they come in with an attorney's fees argument for the incentive awards. And unless you have some questions, I will submit the case. Thank you to both counsel. The case is submitted. Thank you.